Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEY FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| SIGNATURE CAR SPA I, L.P. | § | CASE 04-80418-SAF-11 |
| | § | |
| DEBTOR | § | |

**AMENDED DISCLOSURE STATEMENT OF SIGNATURE CAR SPA I, L.P. PURSUANT TO SECTION**
**1125 OF THE BANKRUPTCY CODE DATED DECEMBER 30, 2004**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE
HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I

**INTRODUCTION**

**Identity of the Debtor**

Signature Car Spa I, L.P.  ("**Debtor**") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas Dallas Division ("**Court**") on September 28, 2004. **Debtor** at the time of filing operated a full service car wash in Cedar Hill, Texas. **Debtor** purposes to restructure its current indebtedness and continue its operations to provide a dividend to the unsecured creditors of **Debtor**.

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE
DATED AUGUST 27, 2004 - Page 1**

### Purpose of Disclosure Statement; Source of Information

**Debtor** submits this Disclosure Statement ("Disclosure Statement"); pursuant to Section 1125 of the **Code** to all known **Claimants** of **Debtor** for the purpose of disclosing that information which the **Court** has determined is material, important, and necessary for **Creditors** of **Debtor** in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the **Debtor's Plan of Reorganization** dated December 30, 2004 ("**Plan**"). This Disclosure Statement describes the operations of the **Debtor** contemplated under the **Plan**. You are urged to study the **Plan** in full and to consult with your counsel about the **Plan** and its impact upon your legal rights. Any accounting information contained herein has been provided by the **Debtor**.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a **Debtor** is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a **Plan** is the principal purpose of a Chapter 11 reorganization case. A **Plan** sets forth the means for satisfying claims against and interests in the **Debtor**. After a **Plan** has been filed, it must be accepted by holders of claims against, or interests in, the **Debtor**. Section 1125 of the **Code** requires full disclosure before solicitation of acceptances of a **Plan**. This Disclosure Statement is presented to **Claimants** to satisfy the requirements of Section 1125 of the **Code**.

### Explanation of the Process of Confirmation

Even if all **Classes** of **Claims** accept the **Plan**, its confirmation may be refused by the **Court**. Section 1129 of the **Code** sets forth the requirements for confirmation and, among other things, requires that a **Plan** of reorganization be in the best interests of **Claimants**. It generally requires that the value to be distributed to **Claimants** may not be less than such parties would receive if the **Debtor** were liquidated under Chapter 7 of the **Code**.

Acceptance of the **Plan** by the **Creditors** and **Equity Interest Holders** is important. In order for the **Plan** to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the **Plan** in such class must vote for the **Plan** and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the **Plan** in such class must vote for the **Plan**. Chapter 11 of the **Code** does not require that each holder of a claim against, or interest in, the **Debtor** vote in favor of the **Plan** in order for it to be confirmed by the **Court**. The **Plan**, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 2**

The **Court** may confirm the **Plan** even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a **Plan** over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the **Code**.

**Confirmation** of the **Plan** discharges the **Debtor**s from all of their pre-confirmation debts and liabilities except as expressly provided for in the **Plan** and Section 1141(d) of the **Code**. **Confirmation** makes the **Plan** binding upon the **Debtor**s and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the **Plan**.

### Voting Procedures

**Unimpaired Class**. **Claimants** in Class 1 and 6 are not impaired under the **Plan**. Such Class is deemed to have accepted the **Plan**.

**Impaired Classes**. The Class 2, 3, 4 and 5 **Claimants** are impaired as defined by Section 1124 of the **Code**. The **Debtor** is seeking the acceptance of the **Plan** by **Claimants** in Classes 2 through 5. Each holder of an **Allowed Claim** in Classes 2 through 5 may vote on the **Plan** by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

The **Debtor** is seeking acceptance of the **Plan** by the (i) Allowed Tax Creditors; (ii) Allowed Secured Creditors; (iii) the Allowed Claims of the Unsecured Creditors; and (iv) the Allowed Claims of the Equity Interest Holders.

Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the **Debtor** in connection with the **Debtors**' request for confirmation of the **Plan**.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt) acceptance and revocation or withdrawal of ballots or master ballots will be determined by the **Debtor** in its sole discretion, whose determination will be final and binding.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the **Plan** or receive or retain under the **Plan** on account of such claim or interest, property of a value as of the **Effective Date** of the **Plan**, that is not less than the amount that such holder would so receive or retain if the **Debtor** was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the **Plan**, on account of such claim, property of a value, as of the **Effective Date** of the **Plan**,

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 3**

that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the **Plan** to be confirmed, the Bankruptcy Court must determine that the **Plan** is in the best interests of the **Debtor's** creditors. Accordingly, the proposed **Plan** must provide the **Debtor's** creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the **Debtor's** creditors, other than the secured creditors, would receive nothing. Accordingly, since the **Plan** proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the **Plan** satisfies the requirements of Section 1129(a)(7).

### Cramdown

The Court may confirm the **Plan** even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a **Plan** over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Under the Debtor's Plan, if confirmed, the current partners, James and Charity Tetteh will be allowed to maintain their 100% ownership of the Reorganized Debtor. The Tettehs will be allowed to keep their 100% ownership of the Reorganized Debtor even though the unsecured creditors may not receive full payment on their indebtedness. In exchange for their ownership, the Tettehs will forfeit their distribution under Class 5. Charity Tetteh currently holds a claim in Class 5 for $33,271. James Tetteh currently holds a claim in Class 5 of $468,000. Under the provisions of section 1129(b) of the Bankruptcy Code, the current equity holders of the Debtor, would not be entitled to keep their interests, over the objection of a Class of unsecured creditors, unless the unsecured creditors receive full payment. This is known as the "absolute priority rule".

In this case, the current equity holders shall be allowed to retainer their ownership even though all unsecured creditors may not be paid in full. This treatment would violate the "absolute priority rule" unless the Court determines that the "new value" in the form of the distribution to be forfeited by the Tettehs is sufficient to provide an exception to the "absolute priority rule".

## II
## REPRESENTATIONS

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the **Code** to all of the **Debtor** known **Creditors** and other parties in interest in connection with the solicitation of acceptance of its **Plan**, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of **Claims**, to make an informed judgment in exercising its rights either to accept or reject the **Plan**. A copy of the **Plan** is attached hereto as **Exhibit "A"**.]

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 4**

[After a hearing on notice, the **Court** approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the **Plan**.]

The information contained in this Disclosure Statement has been derived from the **Debtor**, unless specifically stated to be from other sources.

All initially capitalized and bolded words used in this Disclosure Statement have the same definitions provided for in Article I of the **Plan**.

NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.**

### III

### FINANCIAL PICTURE OF THE DEBTOR

#### Financial History and Background of the Debtor

The Debtor was formed in 2001 for the purposes of constructing and operating a car wash located at 115 W. Beltline Road in Cedar Hill, Texas. The Debtor had projected that it would be able to construct the car wash and open for business by the Spring of 2002. However, as a result of significant delays in the construction process the Debtor was not able to open the car wash until November 2002, missing the entire 2002 summer season. Additionally, the Debtor was forced to expended nearly $40,000 to construct a driveway into the business that was not originally planned.

The Debtor was also hurt by the fact that while waiting for the construction delays another car wash opened just down the street thereby resulting in unexpected competition. All of these factors contributed to the car wash's cash flow problems and a severe decrease in the original projected revenues. The Debtor was unable to make its payments to the secured creditor and was forced to seek bankruptcy protection.

#### Post-Petition Operations

The Debtor originally filed this case on September 29, 2004. Since the filing the Debtor has been able to work with its secured lender, US Bank ("USB") and reach agreements on a cash collateral order. The Debtor has been able to reduce overhead costs and increase productivity. As a result of the increase in competition, the Debtor's business will probably never be able to achieve the results projected at the time of the acquisition, however, the Debtor has been able to stabilize the operations. The Debtor's monthly operating reports on file with the bankruptcy court show that its income levels have been steady since the

filing at approximately $47,000 per month. The Debtor's projections attached hereto provide for ongoing income levels to remain on average around $47,000 per month. The 2006 projections provide for only a modest increase in approximately 5% in income. The Debtor believes the subsequent years will yield only similar moderate income increases of between 3 to 5 % per year.

### Future Income and Expenses Under the Plan

Attached hereto as Exhibit "B" are projections of gross income, expenses and net operating income for the next two (2) years. It is anticipated that after confirmation, the **Debtor** will continue in business. Base upon the projections, the **Debtor** believes they can service the new debt to the secured creditors, tax creditors and pay the dividend to the unsecured creditors.

### Post-Confirmation Management

Upon Confirmation of the **Debtor's Plan**, James Tetteh will remain Managing Partner. The annual salary of James Tetteh will be $ 24,000.

### IV.

### ANALYSIS AND VALUATION OF PROPERTY

The Company owns and operates a full service car wash. The value of the car wash, as noted above, has dropped considerably in the past few years. The Company believes there is no likelihood of any dividend to the unsecured creditors in the event of a liquidation of the assets of the **Debtor**. The secured creditor has a lien on all assets of the **Debtor** in the amount of more than $1,200,000. The **Debtor** believes all the real and personal property would not bring more than $650,000 upon a liquidation sale. The Debtor does believe the real and personal property are worth more as a going concern, however, the Debtor believes that even a sale of the business at its current business level would not yield enough to provide a dividend.

A liquidation analysis of the **Debtor's** assets is attached hereto as **Exhibit "C".**

### V.
### SUMMARY OF PLAN OF REORGANIZATION

The **Debtor** will continue in business. The **Debtor's Plan** will break the existing claims into 6 categories of Claimants. These unsecured claimants will receive cash payments over a period of up to three (3) years beginning the **Effective Date**. Secured and Tax Creditors will be paid over a longer period of time.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of **Allowed Claims** or interests pursuant to this Articles V and VI of this **Plan** shall be the sole an exclusive

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 7**

means for full settlement, release and discharge of their respective **Claims**, **Debts**, or interests. On the **Confirmation Date**, the **Reorganized Debtors** shall assume all duties, responsibilities and obligations for the implementation of this **Plan**. Any class of **Claimants** failing to vote on this **Plan** shall be deemed to have accepted this **Plan** in its present form or as modified or amended as permitted herein.

**Class 1 Claimants** (**Allowed Administrative Claims of Professionals and US Trustee**) are unimpaired and will be paid in cash and in full on the **Effective Date** of this **Plan**. Professional fees are subject to approval by the **Court** as reasonable. **Debtors'** attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of **Confirmation** or approval by the **Court** out of the available cash. Class 1 **Creditor Allowed Claims** are estimated as of the date of the filing of this **Plan** to not exceed the amount of $10,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the **Effective Date**. The **Debtor** is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed. The Class 1 Claimants are not impaired under this **Plan**.

**Class 2 Claimants** (**Allowed Tax Creditor Claims**) are impaired and shall be satisfied as follows: The Allowed Amount of all **Tax Creditor Claims** shall be paid out of the revenue from the continued operations of the business. The Internal Revenue Service ("IRS") has filed a claim for 941 taxes based upon unfiled returns in the amount of $13,084. The Debtor believes these returns were filed or if not filed will be filed and will show no outstanding tax liability. However, to the extent the IRS claim exists it will be treated as a priority claim. This claim will be paid in full over a 72 month period from date of assessment commencing on the **Effective Date**, with interest at a rate of 6% per annum. In the event the entire amount alleged is due, the monthly payment shall be approximately $216.. The **Tax Creditor Claims** to be the Dallas County, City of Cedar Hill, and Cedar Hill ISD ("Tax Claims") for real and business personal property taxes for the year 2004 in the total amount of $18,042.14. These taxes shall be paid over a period of 72 months with interest at a rate of 5% per annum, resulting in a monthly payment of $290.57 commencing on the Effective Date. The Tax Claims will be allowed post-petition pre confirmation statutory interest at the rate of 12% per annum and post confirmation interest at the rate of 5% per annum. The Debtor retains the right to pre-pay this amount at anytime without penalty for early payment. The Debtor will pay year 2005 property taxes owed to Tax Claimants in the ordinary course of business. The Debtor shall have 60 days from the entry of the order confirming the plan to object to Tax Claims. The **Tax Claimants** shall retain their liens on these properties until they receive payment in full. Class 2 Claimants are impaired under this **Plan**.

**Class 3 Claimants** (**Allowed Secured Claim of US Bank**) are impaired and shall be satisfied as follows: the Allowed Secured Claims of **US Bank ("USB")** shall be divided into two parts, a secured portion and an unsecured portion. The secured portion shall represents the value of the collateral of **USB** as of the **Effective Date**. The total value of the assets as an ongoing concern securing the **USB** indebtedness is $900,000. Therefore, **USB** will be allowed a Class 3 claim in the amount of $900,000 and a Class 5 claim of $300,000. The Class 3 claim shall be paid with interest at a rate of 5% per annum, commencing on the **Effective Date**. The Class 3 claim shall be based upon a 25 year amortization and, shall be paid in 300 consecutive monthly payments, in the amount $5,261.31 each.. In the event, **USB**

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 8**

elects to treat its claim as fully secured under section 1111(b) of the **Code**, **USB** will not receive a Class 5 Claim. The Debtor reserves the right to pre-pay the Class 3 claim without penalty at any time. USB shall retain their liens of on the assets of the **Debtor**, but shall release their liens, if any, when paid in full as called for by this **Plan**. The Class 3 Claimants are impaired under this **Plan.**

**Class 4 Claimants (Allowed Claims of General Unsecured Creditors less than $5,000)** are impaired and shall be satisfied as follows: The Allowed claims of **General Unsecured Creditors less than $5,000** will be satisfied out of the continued operations of the company. The **Debtor**'s shall pay to the **Unsecured Creditors less than $5,000** quarterly payments in the total amount of 20% of their Allowed Claim. The payment will commence 90 days after the **Effective Date** and continue for a period of 1 quarter. Based upon the **Debtor**'s review of its books and records and the claims filed in the case, the **Debtor** believes the total amount of Unsecured Claims less than $5,000 to be approximately $20,000.00. The Class 4 creditors are impaired under this **Plan**.

**Class 5 Claimants (Allowed General Unsecured Claims of $5,000 or more)** are impaired and shall be satisfied as follows: The Allowed claims of the **General Unsecured Creditors of $5,000 or more** shall receive payments in an amount equal to 10% of their allowed claim over a period of 12 quarterly payments commencing on the last day of the first full calender quarter after the **Effective Date** of the **Plan,** assuming **USB** does not make an election under section 1111(b) of the **Code**. In the event, **USB** elects under section 1111(b) of the **Code**, the **Allowed General Unsecured Creditors of $5,000 or more** shall receive 33% of their allowed claim over the same payment period. Based upon the Proofs of Claim currently on file and the Schedules, the **Debtor** anticipates the total **Allowed General Unsecured Creditors more than $5,000,** excluding the claims of **USB** will not exceed $150,000. The Class 5 Claimants are impaired under the **Plan**. The Class 5 Claimants are impaired under the **Plan**.

**Class 6 Claimants (Allowed Partner Interests)** are not impaired and shall be satisfied as follows: The current equity holders shall be allowed to retain their ownership interest in the **Debtor** in exchange for forfeiting their Class 5 Claim distribution. Class 6 is not impaired.

ARTICLE VI
**MECHANICS/IMPLEMENTATION OF PLAN**

**Debtor** anticipates the continued operations of the business to fund the **Plan**. The Debtor shall also use its cash reserves to fund the Plan. All payments under the **Plan** shall be made through the **Disbursing Agent**.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this **Plan** and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this **Plan**, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 9**

applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this **Plan** or the offer, issuance, sale or purchase of securities.

## VII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "B". The **Debtor** believes that the projections are conservative based upon its current operations. The projections presume an increase in sales of 5% per year over the life of the **Plan**. The projections also assume an increase in expenses of 3% per year over the life of the **Plan**. Based upon the projections, the **Debtor** believes the **Plan** to be feasible.

Neither the **Debtor,** nor any member, officer, director, employee, agent, or professional shall have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Cases, the confirmation of the **Plan**, the consummation of the **Plan**, or the administration of the **Plan** or the property to be distributed under the **Plan**, except for willful misconduct or gross negligence.

## VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the **Plan** as set forth in Article XIV of the **Plan**.

This **Plan** shall be the sole and exclusive remedy for any Creditor of the **Debtor** dealt with herein, so long as **Debtor** or the **Reorganized Debtor** is not in default under the **Plan.**

## IX.
## ALTERNATIVES TO DEBTOR"S PLAN

If the **Debtor**'s **Plan** is not confirmed, the **Debtors**' bankruptcy case may be converted to a case under Chapter 7 of the **Code**, in which case a trustee would be appointed to liquidate the assets of the **Debtors** for distribution to its **Creditors** in accordance with the priorities of the **Code**.

Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the payment of the Internal Revenue Service claims and the secured creditor claims would leave less value to be distributed to the unsecured creditors than proposed under the **Plan**. A liquidation analysis is attached hereto as Exhibit "C"

## X
## RISKS TO CREDITORS UNDER THE DEBTOR"S PLAN

**Claimants** and **Equity Interest Holders** should be aware that there are a number of substantial risks involved in consummation of the **Plan**. The risk connected with this Plan is the continued operations

of the Debtor at its historical sales. The **Plan** contemplates that there will be excess funds to pay Creditor Claims.

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the **Plan** may result in federal income tax consequences to holders of **Claims**, **Equity Interest Holders**, and to the **Debtors**. Tax consequences to a particular **Creditor** or **Equity Interest Holder** may depend on the particular circumstances or facts regarding the **Claim** of the **Creditor** or the interests of the **Equity Interest Holder**. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

## XII.
## PENDING OR ANTICIPATED LITIGATION

The **Debtor** has evaluated potential claims which may be brought. The **Debtor** believes that not claims exist that would benefit the estate.

Dated: December 30, 2004.

Respectfully submitted,

Signature Car Spa I, L.P.

_____
By: James Tetteh
Its: Managing Partner

ERIC A. LIEPINS
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier
ATTORNEY FOR DEBTOR

EXHIBIT "C"

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS |  |  |
| LAND/BUILDING | 400,000[1] | 900,000 |
| EQUIPMENT | 250,000[2] | * (included in above) |
| INVENTORY | 1,000 | 1,000 |
|  |  |  |
| LIABILITIES |  |  |
| ADMINISTRATIVE | 15,000 | 10,000 |
| TAXES | 18,000 | 18,000 |
| USB | 1,200,000 | 1,200,000 |
| UNSECURED CREDITORS | 150,000[3] | 150,000[4] |

---

[1]Debtor has listed the property value at $400,000 in its schedules. At a forced sale the Debtor believed the realized value would be slightly less.

[2]The Debtor has listed the property at $260,000 in its schedules. At Debtor believes the equipment if sold separately would bring a lower number because of the need to dismantle the equipment and move it to another site.

[3]In a Chapter 7 the claims of Charity and James Tetteh of approximately $500,000 would be added to this amount.

[4]The claim of USB in the amount of approximately $300,000 would be including in this number it USB does not elect under 11 U.S.C. section

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 27, 2004 - Page 12**



In a Chapter 7 there is no distribution to the unsecured creditors

Under the plan the unsecured creditors receive between 10% and 33% of their allowed claims.

---

```
1111(b).
```