*Carolyn A. Taylor    TBA #008526800*
*Dominique M. Varner TBA #00791182/FIN 18805*
*Jennine Hovell-Cox    TBA #24002313/FIN 21775*
*333 Clay, 29th Floor*
*Houston, Texas 77002*
*Telephone (713) 759-0818*
*Telecopier (713) 759-6834*
*ATTORNEYS FOR U.S. Bank National Association*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SIGNATURE CAR SPA I, L.P. | § | CASE NO. 04-80418-saf11 |
| 939 Fairway Drive | § | |
| Duncanville, Texas 75137 | § | CHAPTER 11 |
| Debtor in Possession dba | § | |
| Majestic Car Spa | § | |
|       DEBTOR | § | |

## OBJECTION OF U.S. BANK NATIONAL ASSOCIATION TO CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN

COMES NOW U.S. BANK NATIONAL ASSOCIATION ("U.S. Bank"), creditor in the above referenced case, and files its Objection to Confirmation of the Debtor's First Amended Plan of Reorganization filed February 2, 2005 ("First Amended Plan"), [Docket no. 37] and would respectfully show the Court as follows:

### OBJECTIONS

1. **U.S. Bank's Debt.** U.S. Bank holds the Commercial Promissory dated October 30, 2001, in the original principal sum of $1,274,000.00 executed by Debtor, payable to U.S. Bank, with a twenty two (22) year term (matures in 2023) and an initial interest rate of 7%, which rate is adjustable <u>monthly</u> to equal 1.5% above the prime rate as published by the Wall Street Journal ("Note"). Payment of the Note is secured by, among other things, the Construction Deed of Trust dated of even date recorded in Volume 2001221, Page 02982 of the Dallas County Real Property Records, covering a tract of land in the E.C. Thomas Survey

759141/USBS/0003                                             1

Abstract 1472, Dallas County, Texas ("Real Property") and the Commercial Security Agreement of even date covering all furniture, fixtures, equipment, inventory, machinery and accounts receivable and the proceeds and products thereof (collectively "Personal Property"), (the Note, Deed of Trust and Security Agreement being collectively referred to as the "Loan").

2.      **First Amended Plan.** The First Amended Plan treats U.S. Bank as a Class 3 creditor holding a $900,000.00 secured claim ("Secured Claim") and a $300,000.00 unsecured claim ("Unsecured Claim").

The Secured Claim will be paid with interest at 5%, on a 25 year amortization in 300 consecutive calendar payment of $5,261.31 each, commencing on the effective date of the plan (30 days after entry of the Order confirming the Plan) ("Effective Date").

The Unsecured Claim is treated as a Class 5 claim to be paid at ten (10%) (or $30,000.00) payable twelve (12) months following the Effective Date of the Plan.

If U.S. Bank elects to treat its claim as fully secured under 11 U.S.C. Section 1111(b) of the Code, U.S. Bank will not receive payment on the Unsecured Claim.

*Both Class 3 and Class 5 (unsecured) claimants are impaired under the plan.*

3.      **Post-Petition Status of Debt Owing U.S. Bank.** As of the bankruptcy petition date, the payoff on the indebtedness owing U.S. Bank was $1,218,410.04 plus post-petition contractually authorized charges and advances. As of the petition date, the indebtedness owing U.S. Bank was, and currently remains, contractually due for the June 2004 payment.

Pursuant to the terms of the Third Interim Cash Collateral Order, the Debtor is to make adequate protection payments to U.S. Bank in the amount of $1,000.00 per month, commencing on November 19, 2004. This amount is not sufficient to pay the interest owing on the indebtedness, much less to reduce the principal. The payment of principal and interest for the

month of March 2005 is $ 9,110.00, which payment is by contractual agreement, adjusted monthly to equal 1.5% above the prime rate published by the Wall Street Journal.

4.      **Objection - Feasibility**. Debtor's failure and financial inability to make post-petition payments to U.S. Bank and to reduce principal and interest demonstrates that the First Amended Plan is not feasible. [11 U.S.C. Section 1129(a)(1) and/or (a)(2)].

The Operating Reports filed by the Debtor for the calendar months of October 2004 through January 2005 inclusive substantiate that the Debtor's business operations alone are not financially capable of paying the ongoing operating expenses much less the secured debt and priority debt owing to the taxing authorities:

|  | October 2004 | November 2004 | December 2004 | January 2005 |
|---|---|---|---|---|
| **Receipts** | $46,704 | $47,170 | $66,552 | Schedule not attached to the operating report |
| **Disbursements** | $46,662 | $41,889 | $61,069 |  |
| **Difference** | $42 | ($5,821) | $5,483 |  |

*This marginal financial operational level was achieved only with the infusion of cash from third parties in the minimal amount of $20,000.00 per month, totaling the sum of $95,000.00, during the 4 month period from October 2004 through January 2005 inclusive, as documented by information extrapolated from the Debtor's Monthly Operating Reports:*

759141/USBS/0003

3

| Type | Date | Number | Amount | Amount | Balance |
|---|---|---|---|---|---|

**October 2004 (Docket #28)**

| Type | Date | Number | Amount | Amount | Balance |
|---|---|---|---|---|---|
| Check | 10/01/04 | 1874 | | | $4,000.00 |
| Check | 10/08/04 | Transfer to partnership | | $11,500 | $26,244.52 |
| Check | 10/22/04 | Transfer to partnership | | $12,000 | $42,349.90 |
| | | | | *Total* | *$27,500.00* |

**November 2004 (Docket #29)**

| Check | 11/05/04 | Transfer to partnership | | $9,000 | $17,776.54 |
|---|---|---|---|---|---|
| Check | 11/18/04 | Transfer to partnership | | $11,000 | $36,469.40 |
| | | | | *Total* | *$20,000.00* |

**December 2004 (Docket #25)**

| Check | 12/13/04 | Transfer to partnership | | $10,000 | $16,356.55 |
|---|---|---|---|---|---|
| Check | 12/17/04 | Transfer to partnership | | $15,000 | $37,309.44 |
| Check | 12/31/04 | Transfer to partnership | | $13,000 | $57,569.15 |

Total $28,000

**January 2005 (Docket #42)**

| Check | 01/14/05 | Transfer to partnership | | $13,000 | $29,805.68 |
|---|---|---|---|---|---|
| Check | 01/28/05 | Transfer to partnership | | $17,000 | $56,196.07 |
| | | | | *Total* | *$20,000.00* |

Paragraph VII of the First Amended Disclosure Statement states *its feasibility is premised upon sales increases of five (5%) per cent per year over the life of the plan.* However, as evidenced by the Debtor's operating reports, a $20,000 per month cash infusion has been necessary to sustain minimal operations post-petition, without any reduction of secured or priority debt. Yet, the First Amended Plan due not provide for any capital infusions. Clearly, the Debtor's Plan is not economically feasible, and thus, is not confirmable under 11 U.S.C. Section 1129(a)(1) and/or (a)(2).

5. **Objection - Fair and Equitable/Best Interests of Creditors (Interest Rate)**
[11 U.S.C. § 1129(13)(b)(2)]

The First Amended Plan proposes to extend payout on U.S. Bank's claim by no less than 6 years! It also proposes to reduce the interest rate to a fixed rate of 5%.

An interest rate of 5% is well below the market rate for similar commercial loans. By proposing to pay U.S. Bank less than a market rate of interest, the present value of U.S. Bank's claim is too low and the Plan not confirmable.

> [W]hile the present value of cash is its face amount, the present value of a note is intimately tied to its interest rate. This is simply a statutory recognition that $10 in had today is worth more than $10 to be paid in a year; and the Code looks to the value, as of the effective date of the plan, of the promise to pay $10 in the future. Although potentially complex, present value can be simplified if a deferred promise to pay bears a market rate of interest; after the math is done, such a note will have a present value equal to its face amount. If the rate is too low, however, the best interests test will not be met.

*Lawrence P. King et. al.*, Colliers on Bankruptcy, Vol. 7 ¶ 1129.03[7][b][ii] (15th ed. rev. 2001) (internal quotations removed) (emphasis added).

The very terms of the First Amended Plan, which do not provide for a market rate of interest, demonstrate that the Plan was not proposed in good faith, and thus, is not confirmable under 11 U.S.C. Section 1129 (13)(b)(2).

6. **Objection - Liquidation Test**. The present value of what Debtor proposes to pay U.S. Bank is less than what U.S. Bank would receive if the Debtor was liquidated under Chapter 7. The First Amended Plan fails the best interests/liquidation test set out in 11 U.S.C. § 1129(a)(7):

    (a)    The court shall confirm a plan only if all of the following requirements are met:

        * * *

    (7)    With respect to each impaired class of claims or interests -
    (A)    each holder of a claim or interest of such class -
        (i)    has accepted the plan; or
        (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1129(a)(7) (2003) (emphasis added).

U.S. Bank would show that the market interest rate charged on similar commercial loans is at least the current commerical market rate adjustable <u>monthly</u> to equal 1.5% above commercial prime rate as published in the Wall Street Journal. U.S. Bank bases this on many factors, including the financial profile of the borrower, the nature of the collateral, the size of the equity cushion, fluctuations in market interest, the length of the pay-out period, the risk of future default, and the transaction costs attendant to collection of principal and interest.

7.    **<u>Objection – Good Faith; Fair and Equitable (Guarantors)</u>**. Payment of the Loan is additionally secured by the written Unconditional Guaranty of Charity T. Simmonds, M.D., P.A. dated October 30, 2001 ("Guaranty"), the principal non-debtor and sole shareholder of the debtor ("Non-Debtor Principal Guarantor").

The First Amended Plan is a surreptitious attempt to impose a third party injunction as to the Non-Debtor Principal Grantor and to discharge such party's liability under the Guaranty while paying U.S. Bank less than $270,000.00 in principal alone to which it is contractually entitled. The intent to secure a discharge of the Non-Debtor Principal Guarantor's liability is confirmed by the default provisions contained in the First Amended Plan:

759141/USBS/0003        6

(i) upon confirmation, a debt is released to the extent that it is not provided for in the plan (Article 10.1); and/or

(ii) although the plan does not discharge the officers, directors or shareholders from any liability for claims/debts under the plan, the plan is the exclusive remedy for payment so long as there is no default under the plan (Article 10.3); and/or

(iii) upon a default under the First Amended Plan, written notice of default and thirty days after receipt of the notice to cure is required before a creditor may exercise its state law remedies for collection of the claim/debt (Article 9.2 and 9.3).

11 U.S.C. § 524(e) provides, with limited exception, that a discharge does not affect the liability of any other entity:

> "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

Several circuit courts have held that a discharge in bankruptcy will simply not affect the liability of a guarantor. *R.I.D.C. Industrial Development Fund v. Snyder,* 539 F.2d 487, 491 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). *See also, Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985); *In re Scranes, Inc.,* 67 B.R. 985, 989 (Bankr.N.D. Ohio 1986); *Union Carbide Corp. v. Newboles,* C.A. 7 (Ind.) 1982, 686 F.2d 593; (provision of this section governing co-debtors, guarantors and sureties for bankrupts provides the discharge of debtor itself has no effect upon liability of cosigners on note); *NCNB Texas Nat. Bank v. Johnson,* C.A.5 (Tex.) 1994, 11 F.3d 1260 (discharge of principal debtor in bankruptcy reorganization proceedings do not affect non-debtor guarantor's liability on note).

However, contrary to the opinion of many of the circuit courts, the Fifth Circuit Court of Appeals held that when the confirmed reorganization plan releases the guarantor's liability under the guaranty agreement, the doctrine of res judicata bars a creditor's suit to enforce the guaranty against a non-debtor. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir. 1987). *Shoaf* holds that a creditor must object and cause clarity language in confirmation order allowing collection against guarantor or risk being bound by third party injunction. Id.

In accordance with the holding in *Shoaf,* U.S. Bank hereby objects to confirmation of the Debtor's First Amended Plan based upon its default provisions and attempted imposition of a third party injunction demonstrating that the plan was not proposed in good faith as required by Title 11; alternatively, U.S. Bank requests that the First Amended Plan be modified to specifically allow collectivity of any amounts contractually owing on the Loan from the Non-Debtor Principal, Guarantor at such times as determined by U.S. Bank in its sole discretion.

8. **Good Faith and Fair and Equitable (Default Provisions).** The Debtor's First Amended Plan was not proposed in good faith. Good faith means that there is a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purpose of the Bankruptcy Code. In re Nite Lite Inns, 17 Bankr. 367, 370 (Bankr. S.D. Cal. 1982). The most important inquiry is the terms of the Plan. In re Madison Hotel Assoc., 749 F.2d 410, 425 (7th Cir. 1984).

The discharge and default provisions of the First Amended Plan support U.S. Bank's position that the plan was not proposed in good faith and is not fair and equitable, to wit:

    (i)    upon confirmation, a debt is released to the extent that it is not provided for in the plan (Article 10.1); and

759141/USBS/0003

8

(ii) although the plan does not discharge the officers, directors or shareholders from any liability for claims/debts under the plan, the plan is the exclusive remedy for payment so long as there is no default under the plan (Article 10.3); and

(iii) upon a default under the First Amended Plan, written notice of default and thirty days after receipt of the notice to cure is required before a creditor may exercise its state law remedies for collection of the claim/debt (Article 9.2 and 9.3).

Based upon the foregoing, the First Amended Plan cannot be confirmed under the provisions of 11 U.S.C. § 1129(a)(3) and/or (13)(b)(2).

9. **Summary of Objections.** In summary, U.S. Bank requests that confirmation of Debtor's First Amended Plan be denied for the following reasons:

(i) The Plan does not comply with the requirements of Title 11, as required by 11 U.S.C. Section 1129(a)(1); and/or

(ii) The Plan has not been proposed in good faith and not by any means forbidden by law as required by 11 U.S.C. § 1129(a)(3); and/or

(iii) The Plan does not satisfy the "best interests of creditors test" as to the claim of U.S. Bank which is impaired, as the Plan does not propose that U.S. Bank will receive or retain under the plan an account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that U.S. Bank would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, as required by 11 U.S.C. Section 1129(a)(7); and/or

(iv) Because the First Amended Plan is not feasible, confirmation of the Plan is likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan which is prohibited by 11 U.S.C. § 1129 (a)(ii); and/or

(v) The First Amended Plan discriminates unfairly with respect to U.S. Bank's impaired claim which is prohibited by 11 U.S.C. § 1129(a)(8); and/or

(vi) The First Amended Plan is not fair and equitable with respect to U.S. Bank's impaired claim which is prohibited by 11 U.S.C. § 1129(13)(b)(2).

U.S. Bank respectfully request that confirmation of the Debtor's First Amended Plan be denied; and for such other and further relief as is just and proper.

Respectfully submitted,

By: _____
Carolyn A. Taylor    TBA #008526800/FIN 1290
Dominique M. Varner TBA #00791182/FIN 18805
Jennine Hovell-Cox   TBA #24002313/FIN 21775
Hughes, Watters & Askanase, L.L.P.
333 Clay, 29th Floor
Houston, Texas 77002
Telephone (713) 759-0818
Telecopier (713) 759-6834

ATTORNEYS FOR CREDITOR

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing is being served on all parties listed on the attached service list, by electronic transmission and/or by first class U.S. mail, postage prepaid mail, on the 17th day of March 2005.

**Debtor(s)**
Signature Car Spa I., L.P.
dba Majestic Car Spa
939 Fairway Drive
Duncanville, Texas 75137

**Debtor's Attorney**
Eric A. Liepins
Eric A. Liepins, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251

**UST U.S. Trustee**
1100 Commerce St., Rm. 976
Dallas, Texas 75242-1496

_____
Carolyn A. Taylor
Dominique M. Varner
Jennine Hovell-Cox

## SERVICE LIST
Case No. 04-80418-saf11

| PARTIES REQUESTING SERVICE |
| --- |
| Laurie A. Spindler<br>Linebarger, Goggan Blair & Sampson, LLP<br>2323 Bryan Street, Suite 1600<br>Dallas, Texas 75201 |